IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHERRY RIDER, trustee of the Cherry Rider Family Trust and R.W. and CATHY LUCAS, co-trustees of the R.W. Lucas and Cathy Lucas Living Trust, individually and as representative plaintiffs on behalf of persons or concerns similarly situated, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) CIVIL ACTION |
| v. | ) No. 23-1274-KHV |
| OXY USA, INC.; MERIT ENERGY COMPANY, LLC; and MERIT HUGOTON L.P, | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

On December 29, 2023, Cherry Rider, as Trustee of the Cherry Rider Family Trust, and R.W. Lucas and Cathy Lucas, as Co-Trustees of the R.W. Lucas and Cathy Lucas Living Trust, filed a class action complaint against OXY USA, Inc. ("Oxy"), Merit Energy Company, LLC and Merit Hugoton L.P. (together, "Merit"). Plaintiffs allege that by taking improper deductions from royalty payments that Merit made to plaintiffs, defendants breached a stipulation of settlement which the District Court of Stevens County, Kansas entered in Littell v. OXY USA, Inc., No. 98-CV-51. See Class Action Complaint (Doc. #1) filed December 29, 2023. This matter is before the Court on Merit's Motion To Dismiss (Doc. #26) and Defendant OXY USA INC.'s Motion To Dismiss (Doc. #27), both filed February 23, 2024. For reasons stated below, the Court overrules defendants' motions to dismiss.

## Legal Standard

Defendants seek to dismiss plaintiffs' complaint under Rule 12(b)(6), Fed. R. Civ. P. In

ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face.  Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions.  See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019).  Plaintiffs bear the burden of framing their claims with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  See Twombly, 550 U.S. at 556.  Plaintiffs make a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the alleged misconduct.  Iqbal, 556 U.S. at 678.  Plaintiffs must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendants' liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

In evaluating a motion to dismiss under Rule 12(b)(6), the Court can consider not only the complaint, but exhibits and documents which the complaint attaches and incorporates by reference. Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009).

**Factual Background**

Plaintiffs' complaint alleges as follows:

Plaintiff Cherry Rider is Trustee of the Cherry Rider Family Trust. Plaintiffs R.W. Lucas and Cathy Lucas are Co-Trustees of the R.W. Lucas and Cathy Lucas Living Trust. The Trusts own mineral and royalty interests in lands located in the areal confines of the Kansas Hugoton Gas Field.

On November 13, 1998, Bonnie Beelman and Opal Littell and Cherry Rider, as Co-Trustees of the Opal Littell Family Trust, filed suit against Oxy in the District Court of Stevens County, Kansas in a case captioned Littell v. OXY USA, Inc., No. 98-CV-51. In that case, plaintiffs alleged that Oxy failed to properly calculate and pay required royalty payments under oil and gas leases within the Kansas Hugoton Gas Field. On March 13, 2001, the Stevens County court certified the case as a class action. In January of 2007, the class action plaintiffs and Oxy entered into a stipulation of settlement (the "Settlement").[1] On March 4, 2008, the Stevens County court approved the Settlement between the "Participating Class Members" and "Oxy" and entered the journal entry of judgment.[2]

---

[1] Here, plaintiffs attach the Settlement to their complaint. Accordingly, the Court considers the Settlement for purposes of defendants' motions to dismiss.

[2] The Settlement defines "Participating Class Members" as "all Class Members who do not exclude themselves as provided for in the Notice Order." Stipulation Of Settlement (Doc. #1-1) filed December 29, 2023 at 7. The Settlement contains two definitions of "Oxy." Generally, when used in the Settlement, "Oxy" means Oxy and "its parents, subsidiaries, and all affiliated companies." Id. at 5. When used in connection with the "Settled Claims," "Oxy" also includes
(continued. . .)

Cherry Rider is a "Participating Class Member" in the Littell Settlement and remains a named plaintiff and class representative in that case. Similarly, R.W. Lucas is a Participating Class Member. The R.W. Lucas and Cathy Lucas Living Trust is the successor in interest to R.W. Lucas.

Section 2.6 of the Settlement limits the amount and type of expenses that Oxy can deduct from royalty payments to Participating Class Members and their successors. Specifically, Section 2.6 states that Oxy shall not "diminish[] or reduce[] by any charge other than fifteen cents per mmbtu ($0.15/mmbtu) for Gathering Charges, taxed owed by them or the actual cost of transporting such gas on a transmission pipeline." Id. at 13.

In May of 2014, Merit acquired Oxy's assets in the Kansas Hugoton Gas Field and took over operation of Oxy's oil and gas leases contained therein. Section 7.3 of the Settlement provides that the agreement "shall be binding upon" the parties and their successors and assigns. Id. at 22. Further, this section states that an assignment does not relieve any party of its obligations under the Settlement. Id.

Since May of 2014, Participating Class Members and their successors have received royalty payments from Merit or a related entity. These payments have contained improper deductions in breach of Section 2.6 of the Settlement.

## Procedural History

On April 27, 2023 in the District Court of Stevens County, plaintiffs filed a motion to enforce the Settlement in Littell against Merit, as successor in interest to Oxy. On May 26, 2023,

---

[2] (. . .continued)
all present and former successors and assigns. Id.

The "Settled Claims" are "any and all claims. . . based on any facts, circumstances, transactions, events. . . which occurred at any time prior to July 1, 2007, that were or could have been properly alleged in the Action and that in any way related to the Leases, OXY's operation of the Leases, or OXY's failure to operate the Leases." Id. at 8–9.

Merit filed a notice of removal to this Court.  See Littell et al. v. OXY USA, Inc., No. 23-1103 (D. Kan.).  The Honorable Holly L. Teeter sustained plaintiffs' motion to remand, finding that the federal court lacked jurisdiction because the case, which was filed in 1998, commenced before the Class Action Fairness Act went into effect.  Order, Littell et al. v. OXY USA, Inc., No. 23-1103 (D. Kan. Aug. 22, 2023) ECF Doc. 21.

On remand, plaintiffs filed a renewed motion to enforce.  On December 5, 2023, the state court overruled plaintiffs' motion to enforce because the judgment which approved the Settlement had become dormant under Kansas law.  Plaintiffs appeal, and that appeal remains pending.

On December 29, 2023, plaintiffs filed this suit.  Plaintiffs claim that both Merit and Oxy breached the Settlement by taking improper deductions from the royalty payments in excess of that allowed under the Settlement.  Plaintiffs claim that Merit is a successor or assign of Oxy and is therefore bound by the Settlement, including the limitations on deductions.  Plaintiffs assert that Oxy also breached the Settlement because Section 7.3 provides that no assignment relieves Oxy of its obligations under the agreement.

On February 23, 2024, Merit and Oxy filed motions to dismiss plaintiffs' class action complaint.  See Merit's Motion To Dismiss (Doc. #26) and Oxy's Motion To Dismiss (Doc. #27).

**Analysis**

In separate motions, Merit and Oxy argue that under Rule 12(b)(6), the Court should dismiss plaintiffs' breach of contract claim.  Merit and Oxy assert that they did not breach the Settlement because the limitation on royalty payment deductions did not apply to them.  Merit argues that dismissal is warranted because it is not a successor or assign of Oxy and is not bound by the Settlement.  Oxy argues the Court should dismiss the claim against it because the limitation on royalty payment deductions only applies to its own payments to Participating Class Members.

Under Kansas law, plaintiffs state a claim for breach of contract when they allege (1) the existence of a settlement agreement between the parties; (2) sufficient consideration to support the Settlement; (3) plaintiffs' performance or willingness to perform in compliance with the Settlement; (4) defendants' breach; and (5) resulting damages. Stechschulte v. Jennings, 297 Kan. 2, 298 P.3d 1083, 1098 (2013).

### I.  Whether Plaintiffs Allege Merit Is A Successor Or Assign

Merit argues that because it is not a successor or assign of Oxy, it is not bound by the Settlement. At this procedural posture, the Court need not determine whether Merit is indeed a successor or assign, or the scope or terms of any such transaction. See Wichita Destination Devs., Inc. v. Focus Hosp. Servs., LLC, 365 F. Supp. 3d 1172, 1179 (D. Kan. 2019) (whether corporation was alter ego could not be decided on motion to dismiss). Rather, on a motion to dismiss under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Iqbal, 556 U.S. at 679.

Here, plaintiffs' complaint alleges that (1) in May of 2014, Merit acquired Oxy's assets in the Kansas Hugoton Gas Field; (2) at that time, Merit took over operation of Oxy's oil and gas leases, including plaintiffs' leases; (3) in whole or in part, Merit owns these oil and gas leases; (4) since May of 2014, Merit or a related entity has made royalty payments to Participating Class Members; and (5) in pleadings filed with the Tenth Circuit in a separate case, Oxy represented that Merit is its successor in interest with regard to the oil and gas leases. Assuming that plaintiffs' allegations are true, as the Court must do, plaintiffs have sufficiently alleged that Merit is a successor or assign of Oxy.

### II.  Oxy's Motion To Dismiss

Against Oxy, plaintiffs allege that (1) the Settlement is a valid contract between plaintiffs,

as Participating Class Members, and Oxy; (2) the Settlement required Oxy to limit the expenses which it could deduct from royalty payments to Participating Class Members; (3) as a successor or an assign of Oxy, Merit breached the Settlement by taking improper deductions; (4) the Settlement provided that no assignment by Oxy would relieve it of its obligations; and (5) Oxy breached the Settlement by failing to ensure that Merit made royalty payments in accordance with the Settlement.

Oxy argues that plaintiffs' claim for breach of contract fails as a matter of law because (1) any limitation on deductions set forth in the Settlement applied only to Oxy; (2) in May of 2014, Oxy sold its interests in the oil and gas leases to Merit; (3) Oxy has not made any royalty payments to Participating Class Members since May of 2014; and (4) plaintiffs' claims relate solely to the period after Oxy sold its interests in the leases to Merit.

To determine whether plaintiffs' claim fails as a matter of law, the Court applies the general rules of contract construction and considers the Settlement as a whole. To interpret a contract, the Court must ascertain the parties' intent. Marquis v. State Farm Fire & Cas. Co., 265 Kan. 317, 324, 961 P.2d 1213, 1219 (1998). Generally, if the Settlement language is clear, there is no room for rules of construction. Id. "Unambiguous contracts are enforced according to their plain, general, and common meaning in order to ensure the intentions of the parties are enforced." Johnson Cnty. Bank v. Ross, 28 Kan. App. 2d 8, 10, 13 P.3d 351, 353 (2000).

Although Oxy argues that its obligations under the Settlement terminated when it sold its interests to Merit, the Settlement contains no express language to this effect. In response to Oxy's motion to dismiss, plaintiffs cite various provisions indicating that Oxy had an ongoing obligation under the Settlement to ensure that any successors or assigns made royalty payments in accordance with the Settlement. First, plaintiffs point to Sections 2.4 and 2.5. These sections do not describe

when or how Oxy's obligations under the Settlement end; rather, these provisions establish limits on deductions and how Oxy would implement those limits.  Second, plaintiffs point to Section 2.6, which states as follows:

> It is the intent of the parties hereto that the royalty payments received by members of the Plaintiff Class or their successors in interest with respect to gas produced on or after July 1, 2008, shall not be diminished or reduced by any charge other than fifteen cents per mmbtu ($0.15/mmbtu) for Gathering Charges, taxes owed by them or the actual cost of transporting such gas on a transmission pipeline.

Stipulation Of Settlement (Doc. #1-1) at 13.  Plaintiffs highlight that this provision communicates the express intent of the parties without defining a specific payor or making clear that Oxy's obligations terminate at a certain time.  Third, and finally, plaintiffs cite Section 7.3, which states as follows:

> This Stipulation shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns, executors, administrators, heirs and legal representatives, and upon any corporation or other entity into or with which any party hereto may hereafter merge, combine or consolidate, as the case may be; provided however, that no assignment by any party hereto shall operate to relieve such party of any obligation hereunder.

Id. at 22.  Plaintiffs argue that if Oxy could avoid its obligations under the Settlement by assigning its interests in the leases to Merit, then such an assignment would render this provision—specifically, the final sentence—meaningless.  Plaintiffs assert that Section 7.3 therefore bound Oxy to the terms of the Settlement even after it made an assignment.

According to plaintiffs, these sections demonstrate that the parties did not intend to limit the restriction on royalty payment deductions to only Oxy.  Plaintiffs further argue that the purpose of Section 2.6—which expressly sets forth the intent of the parties—was to ensure that the Participating Class Members received the benefit of their bargain going forward, regardless of what entity made the payments.

Based on the allegations in the complaint, for purposes of the pending motion to dismiss,

plaintiffs' reading of the Settlement is a reasonable one. Further, Oxy has failed to show that as a matter of law, the Settlement bars plaintiffs' claim. The Court therefore overrules Oxy's motion to dismiss for failure to state a claim.

### III.    Merit's Motion To Dismiss

Against Merit, plaintiffs allege that (1) the Settlement is a valid contract between plaintiffs, as Participating Class Members, and Oxy; (2) the Settlement required Oxy to limit the expenses it could deduct from its royalty payments; (3) the Settlement is binding on Oxy's successors or assigns; and (4) as a successor or an assign of Oxy, Merit breached the Settlement by taking improper deductions. Merit argues that plaintiffs' claim for breach of contract fails as a matter of law because the royalty payment provisions only apply to payments made by Oxy, its parent corporations, subsidiaries, affiliated companies and predecessors.[3]

The Settlement contains a "split definition" of Oxy. Section 1.2 states that when the Settlement specifies "Oxy" in connection with the "Settled Claims," it includes any parent corporations, subsidiaries, affiliated companies and predecessors, as well as all present and former successors and assigns. Id. at 5. In all other circumstances, however, the Settlement more narrowly defines "Oxy" to include only its parent corporations, subsidiaries, affiliated companies and predecessors. Id.

Merit points to Sections 2.4 and 2.5, which outline the royalty payment methodology with respect to deductions for "Fuel Charges" and "Gathering Charges," to argue that the parties intended the limitation on deductions to only apply to Oxy and its parent corporations, subsidiaries,

---

[3]    Merit also argues that even if the royalty payment provisions apply to Oxy's successors and assigns, plaintiffs fail to allege that Merit is a successor or an assign of Oxy. In Section I of this order, the Court concluded that plaintiffs sufficiently alleged that Merit is a successor or an assign of Oxy.

affiliated companies and predecessors. Indeed, because these two sections involve future royalty payments and not the "Settled Claims," the narrower definition of Oxy applies. Although plaintiffs have sufficiently alleged that Merit is a successor or an assign of Oxy, the complaint fails to allege that Merit is a parent corporation, subsidiary, affiliated company or predecessor. Merit therefore argues that because these two sections refer to "Oxy" as the actor, plaintiffs have not alleged that Sections 2.4 and 2.5 specifically bind it.

Plaintiffs, however, cite Sections 2.6 and 7.3 to demonstrate the parties' intent that (1) the limitation on deductions is not limited to only payments made by Oxy or its corporate affiliates and (2) the obligations under the Settlement would bind Oxy's successors and assigns. As discussed above, for purposes of the pending motion to dismiss, the Court finds plaintiffs' interpretation of these provisions to be reasonable. Merit has not shown that as a matter of law, plaintiffs cannot prevail based on the terms of the Settlement. For these reasons, the Court overrules Merit's motion to dismiss for failure to state a claim.

**IT IS THEREFORE ORDERED** that Merit's Motion To Dismiss (Doc. #26) and Defendant OXY USA INC.'s Motion To Dismiss (Doc. #27), both filed February 23, 2024, are **OVERRULED.**

Dated this 29th day of April, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge